FILED BY____MB____D.C.

Sep 21, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTP

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-MJ-00094-SMM

UNITED STATES OF AMERICA,

v.

SAMANTHA COLLORA,

      Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? **No.**

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? **No.**

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? **No.**

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    */s/ Carmen M. Lineberger*_____

Carmen M. Lineberger, Court ID 5501180
Assistant United States Attorney
Carmen.Lineberger@usdoj.gov
United States Attorney's Office
101 South US Highway 1, Suite 3100
Fort Pierce, Florida 34950
Telephone: 772-466-0899

AO 91 (Rev. 11/11)  Criminal Complaint

AUSA Carmen M. Lineberger

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

FILED BY_____MB_____D.C.

**Sep 21, 2023**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTP

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| SAMANTHA COLLORA, | ) | 23-MJ-00094-SMM |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 16, 2023_____ in the county of _____Indian River_____ in the _____Southern_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of a Controlled Substance |
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

-SEE ATTACHED AFFIDAVIT-

Certified to be a true and
correct copy of the document on file
Angela E. Noble, Clerk,
U.S. District Court
Southern District of Florida
By____Meaghan Brown____
Deputy Clerk
Date____Sep 21, 2023____

☑ Continued on the attached sheet.

*Complainant's signature*

Cory Tomblin, Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by videoconference.

Date: _____September 21, 2023_____

*Judge's signature*

City and state: _____Fort Pierce, Florida_____       Shaniek Mills Maynard , U.S. Magistrate Judge
*Printed name and title*

**<u>AFFIDAVIT OF</u>**
**<u>CORY TOMBLIN, SPECIAL AGENT</u>**
**<u>DRUG ENFORCEMENT ADMINISTRATION</u>**
**<u>IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT</u>**

I, Cory Tomblin, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I have been employed as a Special Agent with the Drug Enforcement Administration since March 26, 2022.  Prior to my employment with the DEA, I served as a law enforcement officer in Highlands County, Florida, since December of 2009. My experience in illegal drug investigations ranges from making street-level arrests, as a patrolman and a drug-detection canine handler, to investigating long-term structured drug trafficking organization, as a narcotics detective and a DEA Task Force Officer.

2.      I have also supervised illegal drug investigations, as a Detective Sergeant for the Highlands County Sheriff's Office Crime Suppression Unit. As a Detective Sergeant, I supervised numerous state and federal drug investigations, which included conducting street-level drug arrests, controlled purchases, undercover operations, the use of confidential sources, and Title III wiretap intercept investigations. I have testified in state and federal court proceedings, including but not limited to depositions, probable cause hearings, suppression hearings, grand jury proceedings, jury trials, and sentencing hearings. During my law enforcement career, I have been a case agent and/or assisted and/or supervised hundreds of drug investigations.

3.      I have authored, executed, or approved over one hundred search warrants or court orders. I have become familiar with the odor and appearance of both burnt and fresh cannabis. I have been involved in the investigation and dismantling of numerous cannabis-grow operations. I have become familiar with the appearance of all common illegal drugs and the paraphernalia associated with such. I have attended over 2,000 hours of advanced training in law enforcement,

the majority of which focused on drug investigations, including clandestine methamphetamine, PCP, LSD laboratories, and fentanyl pill press operations.

4.      As a Special Agent, I completed a rigorous seventeen (17) week basic agent training academy in Quantico, Virginia. The training focused on but was not limited to, narcotics and dangerous drug investigations and enforcement, asset forfeiture, confidential source management, undercover operations, surveillance, operational planning, firearms, and tactics. Currently, I am assigned to the DEA Port St. Lucie Resident Office, in Port St. Lucie, Florida.

5.      I am a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7).  I am empowered by law to conduct investigations of, and to make arrests for, among other things, offenses enumerated in Title 21, United States Code Sections 841(a)(1) and 846 and Title 18, United States Code Section 2.

6.      This Affidavit is being submitted for the sole purpose of establishing probable cause that, on May 16, 2023, Samantha COLLORA ("COLLORA") conspired with and aided and abetted Alfonso GUERRERO[1] in the distribution of powder fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code Section 2.

7.      The information contained in this Affidavit is based upon my personal observations, as well as information provided to me by other law enforcement officers.  This Affidavit does not include each and every fact known to me, but rather contains sufficient facts to establish probable cause that Singleton committed the offenses set forth herein.

---

[1]      On September 14, 2023, U.S. Magistrate Shaniek Mills Maynard signed a criminal complaint, charging Alphonso GUERRERO with the distribution of powder fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. (Case No. 23-MJ-00087-SMM)

**PROBABLE CAUSE**

8.      I am investigating the illegal possession and distribution of powder fentanyl, in Indian River County, by Alfonso GUERRERO, COLLORA, and their associates.

9.      On Tuesday, May 16, 2023, Indian River County Sheriff's Office (IRCSO) Detective John Pollacek responded to a fatal drug overdose at 950 25th Street SW, Vero Beach, Indian River County, Florida. Indian River County Fire Rescue had already transported David Eller (Decedent) to the Cleveland Clinic Hospital in Vero Beach, Florida. The Emergency Room staff pronounced the Decedent dead at 6:36 PM.

10.     Later, at the Decedent's residence, Detective John Pollacek spoke with the Decedent's mother, who told Detective Pollacek that she found her son, the Decedent, seated on the toilet slumped over in their bathroom.

11.      IRSCO Detectives located a cell phone, and drug paraphernalia, consisting of a cut straw, a lighter, and burnt aluminum foil in the bathroom near where the mother found the Decedent. Detectives John Pollacek and Dylan Farinacci used a sterile cotton swab to collect a sample of the residue inside the straw. They conducted a presumptive field test on the residue, which yielded a positive reaction for MDMA.

12.     Decedent's mother confirmed to Detective Pollacek that the cell phone located on the bathroom counter belonged to the Decedent.

13.     Detective Pollacek accessed the Facebook Messenger application on the Decedent's cellphone and located a May 16, 2023, drug-related conversation with GUERRERO, which spanned from approximately 1:00 PM to 4:00 PM.

14.     Decedent's mother gave Detective Pollacek access to her Vivint surveillance system doorbell camera.  Detective Pollacek observed that the doorbell cameras system had

3

recorded four videos capturing GUERRERO meeting with the Decedent on the front porch of the residence.  In the video, recorded on May 16, 2023, beginning at 4:17 PM, GUERRERO and the Decedent are shown sitting together on the front porch of the residence. GUERRERO is showing retrieving a bag of white powder from his pocket. The bag looked to be consistent with the size and shape of a three-gram bag, commonly seen in the street-level distribution of illegal drugs. While untying the baggie, GUERRERO can be heard asking the Decedent if he had any aluminum foil. The Decedent is shown handing GUERRERO a small piece of aluminum foil from his right pocket. GUERRERO is shown removing a small baggie of white powder from the larger baggie. GUERRERO is shown emptying a small amount of white powder on the foil, folding it, and then handing it to the Decedent, who is shown placing it in his pants pocket.

15.      In addition to GUERRERO, a female is observed in the video, who was identified as COLLORA. On May 16, 2023, COLLORA drove GUERRERO to the Decedent's residence in a white Dodge pickup truck. The video shows that COLLORA followed behind GUERRERO to the front porch of the residence and stood within a few feet of GUERRERO when he asked the Decedent for the aluminum foil. COLLORA stood watching as GUERRERO retrieved the white powdery substance from his pocket. As GUERRERO began to pour the dosage of white powdery on the aluminum foil, the video shows COLLORA telling GUERRERO that he needs a "wind-block."  Thereafter, COLLORA walked over to GUERRERO and cupped her hands around GUERRERO to block the wind, similar to the way one might shield the flame of a cigarette lighter from the wind, in order to prevent the wind from blowing the fentanyl powder off of the aluminum foil. With the assistance of COLLORA, GUERRERO was able to distribute the substance to the Decedent.

16.     I have reviewed these videos. Based on the circumstances, my training and law enforcement experience, the aforementioned video clearly shows GUERRERO, with COLLORA assisting him, distributing the white powdery substance to the Decedent. I suspected the white powdery substance distributed to the Decedent by GUERRERO was powder fentanyl.

17.     Using Facebook Messenger on the Decedent's cellphone, Detective John Pollacek began messaging GUERRERO, in an attempt have him deliver more of the same controlled substance, as he did on Tuesday, May 16, 2023. As Detective Pollacek conversed with GUERRERO, other IRCSO detectives surveilled GUERRERO at 866 26th Place, Apt 1, Vero Beach, Florida.

18.     On May 18, 2023, at approximately 12:20 PM, IRCSO Detectives Brandon McKay and Steven Coleman observed GUERRERO leave his residence, on foot, and walk to the Walmart Neighborhood Market parking lot, at 1750 US 1, Vero Beach, Florida. There he entered a black Hyundai registered to N. H. GUERRERO then exited the vehicle and walked to Sonic Drive-In at 1780 US 1, Vero Beach, Florida. Shortly thereafter, GUERRERO left Sonic Drive-In, returning to 866 16th Place, Vero Beach. Shortly thereafter, GUERRERO walked to Arby's, located at 1605 US-1, Vero Beach, Florida.

19.      When GUERRERO entered the parking lot, the dialog with GUERRERO became intermittent, causing the agents/detectives to arrest GUERRERO for violating Florida drug laws.

20.     On May 18, 2023, at approximately 1:26 PM, GUERRERO was arrested. IRCSO Detective Noe Borjas conducted a search incident to arrest, which revealed GUERRERO was in possession of two bags of a white powdery substance packaged for street-level sale. The first bag weighed approximately 8.06 grams, and the second weighed approximately 4.61 grams. The white powdery substance was suspected to be powder fentanyl.

21.     A presumptive field test was conducted on the suspected fentanyl. The field test yielded a positive reaction for fentanyl. Detective Pollacek transferred the care custody and control of the fentanyl to IRCSO evidence custodians.

22.     GUERRERO was transported to the Indian River County Sheriff's Office, where Special Agent Cory Tomblin and Detective Pollacek advised GUERRERO of his Miranda Warnings from a prepared card. Post- Miranda, initially, GUERRERO denied giving drugs to the Decedent, until he was confronted with the doorbell surveillance video. GUERRERO then claimed he delivered to the Decedent what he thought was "Molly" or MDMA. GUERRERO admitted, however, that before that transaction, he purchased an "eight-ball" fentanyl (approximately 3.5 grams) from N. H and had repackaged the fentanyl in smaller bags. GUERRERO admitted that he had the fentanyl and MDMA in his pocket and admitted that he may have provided the Decedent with fentanyl, instead of the MDMA.

23.     GUERRERO lied and initially said COLLORA gave the Decedent the fentanyl. GUERRERO placed an audio-recorded controlled phone call via Facebook Messenger. GUERRERO began the conversation by asking COLLORA about the drugs she provided to the Decedent. However, we quickly realized that GUERRERO was lying.  After GUERRERO mentioned the Decedent overdosed after they left his residence and died, GUERRERO asked COLLORA what drugs she gave him to give to the Decedent. COLLORA immediately corrected GUERRERO stating that she did not provide anything, and that GUERRERO gave the Decedent the powder fentanyl, that he had just purchased from "Mitch" (N.H). GUERRERO dropped his head, and his voice became muffled as the two then talked in circles about the Decedent's death.

24.     After the controlled phone call, other IRCSO detectives contacted COLLORA at her residence and brought her to the IRCSO. Detective Pollacek advised COLLORA of her

6

Miranda Warnings from a prepared card. Post-Miranda, COLLORA stated she drove GUERRERO to the Dollar General Store, 830 27th Avenue SW, Vero Beach, to meet "Mitch" (N.H.).  From there, COLLARO said they traveled to her residence, where GUERRERO asked her for small induvial plastic bags, commonly associated with street-level drug distribution. COLLORA gave GUERRO four small bags and watched as he divided the fentanyl into these bags for distribution.

25.     According to COLLORA, she and GUERRERO left her residence, and she drove to the Decedent's residence. COLLORA claimed that she thought GUERRERO was going there to pick up clothes, but GUERRERO never entered the house to retrieve clothes. COLLORA admitted that she watched as GUERRERO served the Decedent a dose of powder fentanyl and that she shielded the fentanyl from the wind with her hands. COLLORA confirmed that she knows what fentanyl looks like because she is a daily user of fentanyl and that she also knows that GUERRERO and M.H. are both fentanyl dealers, because she has purchased fentanyl from them.

## DEA LABORATORY ANALYSIS

26.     On June 14, 2023, IRCSO Evidence Custodians transferred the suspected fentanyl seized from GUERRERO to me. On the same date, I transferred the care, custody, and control of the suspected fentanyl to the DEA Southeast Laboratory in Miami, Florida, to be analyzed.

27.     On June 22, 2023, Detective John Pollacek transferred the custody of the straw and aluminum foil, found with the Decedent, to me. On the same date, I transferred the care, custody, and control of the suspected fentanyl to the DEA Southeast Laboratory in Miami, Florida, to be analyzed.

28.     On June 30, 2023, I received the results of the laboratory analysis of the exhibit. DEA chemists confirmed the white powder inside seized from GUERRERO was fentanyl.

29.     On July 18, 2023, I received the results of the laboratory analyses of the exhibits. DEA chemists confirmed the white powder inside of the straw was a combination of Dimethylpentylone, Pentylone, and Fentanyl. The laboratory was unable to detect controlled substances in the burnt residue on the aluminum foil.

### 19TH JUDICIAL CIRCUIT MEDICAL EXAMINER AUTOPSY

30.     On Thursday, June 8, 2023, Indian River County Sheriff's Office Detective John Pollacek forwarded me the autopsy report of David Eller (Decedent) from the Medical Examiner's Office of the 19th Judicial Circuit of Florida. The autopsy confirmed Fentanyl, N, N-Dimethylpentylone, and Pentylone, were located in the Decedent's blood.

### CONCLUSION

31.     Based upon the foregoing, I respectfully submit that there is probable cause to believe that, on May 16, 2023, in Indian River County, Samantha COLLORA conspired with and aided and abetted Alfonso GUERRERO in the distribution of powder fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code Section 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

**CORY TOMBLIN**
Special Agent
Drug Enforcement Administration

Sworn to before me, by video conference, in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure, this 21st day of September 2023.

**SHANIEK MILLS MAYNARD**
UNITED STATES MAGISTRATE JUDGE

8